**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| LESTER F. MUMMERT, | DOCKET NUMBER |
| Appellant, | PH-0842-19-0036-I-1 |
| v. | |
| DEPARTMENT OF THE ARMY, | DATE: October 2, 2024 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Lawrence A. Berger, Esquire, Glen Cove, New York, for the appellant.

Asmaa Abdul-Haqq and Gedety N. Serralta-Aldrich, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

## FINAL ORDER

¶1 The agency has filed a petition for review of the initial decision, which reversed its denial of the appellant's request for law enforcement officer (LEO) retirement coverage under the Federal Employees' Retirement System (FERS).

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

For the reasons discussed below, we GRANT the agency's petition for review and REVERSE the initial decision.

## BACKGROUND

¶2      The appellant was employed by the agency as a GS-1811 Criminal Investigator from August 7, 1994, through August 6, 2016. *E.g.*, Initial Appeal File (IAF), Tab 5 at 38, Tab 6 at 36, Tab 8 at 38, Tab 9 at 8-10. Effective August 7, 2016, the agency reclassified his position to a GS-0083 Detective, and it changed his retirement plan from an LEO retirement plan under FERS to a standard retirement plan under FERS. IAF, Tab 5 at 38-41. On December 30, 2016, the appellant requested to retire "as an 1811 Criminal Investigator GS-11" with LEO retirement benefits. *Id*. at 37. On September 24, 2018, the agency denied the appellant's request for LEO retirement under FERS. IAF, Tab 4 at 27-28.

¶3      The appellant filed a Board appeal indicating that he was challenging his position being "unjustifiably classified from a Criminal Investigator 1811 position to a Detective 0083 position." IAF, Tab 1 at 4. With his appeal, the appellant provided a copy of the September 24, 2018 agency decision letter denying his request for LEO retirement under FERS. *Id*. at 7-8. The appellant requested a hearing on the matter. *Id*. at 2. Thereafter, the administrative judge clarified that the sole issue before the Board was whether the appellant could show by preponderant evidence that he was entitled to LEO special retirement benefits under 5 U.S.C. § 8412(d) "from August 7, 1994[,] onward." IAF, Tab 21 at 1.

¶4      The administrative judge held a hearing. IAF, Tab 23; Hearing Transcript (HT). The administrative judge issued an initial decision reversing the agency's determination and finding that the appellant showed by preponderant evidence that he qualified for LEO retirement coverage under FERS from August 7, 1994, to August 6, 2016. IAF, Tab 29, Initial Decision (ID) at 8, Tab 31 at 1. In

pertinent part, the administrative judge found that the appellant proved that the primary duties of the Criminal Investigator position involved the investigation, apprehension, or detention of individuals suspected or convicted of criminal offenses. ID at 6-8. The administrative judge did not make a finding as to whether the appellant was entitled to LEO retirement coverage for service after August 6, 2016.

¶5 The agency has filed a petition for review of the initial decision, the appellant has filed a response, and the agency has filed a reply. Petition for Review (PFR) File, Tabs 1, 3-5.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6 The agency disputes the administrative judge's analysis and argues that the appellant did not prove his entitlement to LEO credit.[2] PFR File, Tab 1 at 6, 12-30. We agree.

¶7 A Federal employee seeking LEO retirement coverage under FERS bears the burden of proving his entitlement to such benefits by preponderant evidence. *Klipp v. Department of Homeland Security*, 34 F.4th 1326, 1331 (Fed. Cir. 2022); *Watson v. Department of the Navy*, 262 F.3d 1292, 1298 (Fed. Cir. 2001); *Fritts v. Department of Homeland Security*, 102 M.S.P.R. 265, ¶ 6 (2006). To qualify for LEO retirement coverage under FERS, the appellant must show that the duties

---

[2] The appellant argues that the agency's petition for review should be dismissed because the agency did not provide a certificate of compliance with "the interim relief order." PFR File, Tab 3 at 5-8. Although the initial decision did not explicitly order interim relief, it also did not explicitly state that interim relief was not being awarded. When, as here, the appellant is the prevailing party, the initial decision must include an affirmative statement one way or the other. 5 C.F.R. § 1201.111(b)(4). The administrative judge's failure to include such a statement means that the agency has an interim relief obligation by operation of statute. *Stewart v. Department of Transportation*, 2023 MSPB 18, ¶¶ 7-10. Nevertheless, dismissal of an agency's petition on interim relief grounds is a matter committed to the Board's discretion, *id.*, ¶ 12, and under the circumstances of this case, we find that dismissal would not be appropriate. This is especially so because interim relief is generally not appropriate in retirement benefits appeals like this one. *See Steele v. Office of Personnel Management*, 57 M.S.P.R. 458, 463-64 (1993), *aff'd*, 50 F.3d 21 (Fed. Cir. 1995) (Table).

of his position: (1) are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States (U.S.), or the protection of U.S. officials against threats to personal safety; and (2) are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals. 5 U.S.C. § 8401(17)(A)(i)-(ii); 5 C.F.R. § 842.802. Primary duties are duties that: (1) are paramount in influence or weight, that is, constitute the basic reasons for the existence of the position; (2) occupy a substantial portion of the individual's working time over a typical work cycle; and (3) are assigned on a regular and recurring basis. 5 C.F.R. § 842.802. Duties that are of an emergency, incidental, or temporary nature cannot be considered primary even if they meet the substantial portion of time criterion. *Id.* In general, if an employee spends on average at least 50% of his time performing certain duties, those duties are his primary duties. *Id.*

¶8 During the pendency of the petition for review, the U.S. Court of Appeals for the Federal Circuit issued a precedential decision in *Klipp*, 34 F.4th at 1333, which emphasized that "the Board must make two independent findings [in evaluating entitlement to LEO credit]: the first must be based on the position description evidence alone, and if that finding is adverse to the employee, the second must be based solely on evidence of his or her actual duties."

¶9 In finding the appellant entitled to LEO retirement coverage from August 7, 1994, through August 6, 2016, the administrative judge relied on the Criminal Investigator position description, excerpts from the Office of Personnel Management (OPM) classification standards for series 1800 positions, the appellant's performance standards and appraisals, as well as evidence of the appellant's day-to-day duties.[3] ID at 6-8. Because the administrative judge did

---

[3] This appeal presents an unusual scenario because the agency asserts that the appellant should have been properly classified as a series GS-0083, instead of a series GS-1811, from August 7, 1994, through August 6, 2016. IAF, Tab 5 at 39-41. Whether this reclassification was correct is outside the Board's jurisdiction. *See Pierce v. Merit*

not make independent findings, as described in *Klipp*, his analysis is not consistent with the court's holding therein. Nevertheless, because the record is fully developed on the relevant issues, we will apply the two-part analysis from *Klipp* on review.

<u>The appellant is not entitled to LEO retirement coverage under FERS from August 7, 1994, through August 6, 2016.</u>

¶10 We have first considered the position description for the GS-1811 Criminal Investigator position. *E.g.*, IAF, Tab 8 at 39-43, Tab 9 at 17-27, Tab 19 at 154-58. We find that the position description does not show that the primary duties of the Criminal Investigator position involved the investigation of individuals suspected or convicted of criminal offenses. In pertinent part, the position description stated that the incumbent investigated "offenses committed by or against military and civilian personnel or against [G]overnment and private property located on Fort Detrick." IAF, Tab 8 at 40. The incumbent investigated "cases of loss, theft, pilferage, or damage of property[,] incidents of fraud, narcotics use and serious vehicle accidents[,] and applicants for [F]ederal employment or benefits who have questionable backgrounds or who are applying for a sensitive position." *Id.* The incumbent also served as an evidence custodian. *Id.*

¶11 Notably, the position description stated that a Criminal Investigator performed "any combination of appropriate investigative methods and techniques," including, among other things, (1) identifying the perpetrator and establishing facts for submission "to [an] appropriate military or civil authority for military or civil judiciary action, or administrative [or] non-judicial action or action to prevent recurrence;" (2) interviewing the subject, complainants, and

---

*Systems Protection Board*, 242 F.3d 1373, 1375-76 (Fed. Cir. 2001). We need not decide whether the administrative judge erred in relying on OPM's classification standards because the position description is more relevant to the Board's determination in this matter. Moreover, even if we consider the classification standards in our analysis, a different outcome is not warranted.

witnesses to obtain information; (3) determining the basis of a complaint and "whether an offense, incident[,] or violation has occurred;" (4) taking written statements, conducting examination of crime scenes, and searching for evidence; (5) analyzing and resolving conflicting testimony or evidence from witnesses through fact finding until evidence to support a legal or administrative decision has been made; (6) conducting surveillance of individuals; and (7) conducting "extensive research to compare suspect documents with information obtained from other sources." *Id.* at 40-41. According to the Criminal Investigator position description, these duties comprised 55% of the duties of the position. *Id.* at 41.

¶12    However, of that 55%, the position description does not identify or estimate how much time was spent on investigation of individuals suspected of *criminal* offenses, as compared to individuals suspected of civil offenses, investigations of applicants or individuals applying for a sensitive position, evidence custodian tasks, or investigations of serious vehicle accidents. Therefore, we find—based solely on the position description—that the primary duties of the Criminal Investigator position did not involve investigations of individuals suspected or convicted of criminal offenses. *See* 5 C.F.R. § 842.802 (stating that, if an employee spends on average at least 50% of his time performing certain duties, those duties are his primary duties).

¶13    We also find that the position description does not show that the appellant's primary duties involved apprehension or detention of individuals suspected or convicted of criminal offenses. Indeed, the position description only showed that 25% of the duties of the Criminal Investigator position involved, among other things, planning and conducting raids, preparing documents to obtain search and arrest warrants, serving subpoenas, interrogating suspects, executing search and arrest warrants, apprehending suspects or offenders, advising suspects of legal rights prior to interrogation, and interrogating suspects and offenders. *Id.*

¶14      Having determined in the initial decision that the appellant proved that the primary duties of the Criminal Investigator position involved the investigation, apprehension or detention of individuals suspected or convicted of criminal offenses, the administrative judge did not alternatively consider whether the appellant proved that the primary duties of the Criminal Investigator position involved the protection of U.S. officials against threats to personal safety.  We do so now.

¶15      Consistent with *Klipp*, we have first considered the Criminal Investigator position description.  The position description identified as duties "[r]espond[ing] to terrorist or hostage incidents if they occur on the installation" and "[s]erv[ing] as a member of the hostage negotiation team," but it states that these duties only comprised 10% of the duties of the Criminal Investigator position.  IAF, Tab 8 at 43.  Beyond this reference, the position description does not show that the appellant's duties involved the protection of U.S. officials against threats to personal safety.  For these reasons, we do not find that the position description supports the appellant's claim of entitlement to LEO credit.

¶16      We next consider the appellant's actual duties.  *Klipp*, 34 F.4th at 1333.  Physical vigorousness and hazardousness are the two major factors to be considered in determining whether a position should be given LEO status based on actual duties.  *Id*. at 1332 (citing *Crowley v. United States*, 398 F.3d 1329, 1339 (Fed. Cir. 2005)).  Physical vigorousness—"the first and most important factor"—"is assessed by evaluating (in order of importance):  whether the position has '(1) strenuous physical fitness requirements; (2) age requirements (such as a mandatory retirement age or a maximum entry age); [and] (3) a requirement that an employee be on call twenty-four hours a day.'"  *Id*. (quoting *Crowley*, 398 F.3d at 1339).

¶17      We have evaluated these criteria, but we find that the actual duties of the Criminal Investigator position do not satisfy the physical vigorousness requirement.  For example, the administrative judge found that the appellant's

major duties included that he "must be proficient in using firearms, subduing persons, and defending [oneself] and others, *making a level of physical fitness necessary*." ID at 6 (emphasis added). However, the record does not support that the Criminal Investigator position involved strenuous physical fitness requirements. Indeed, the appellant and his current supervisor testified that, prior to August 2016, the appellant was not required to undergo any type of physical fitness or agility testing, and he was not subject to any physical fitness standards whatsoever. HT at 21-22, 63 (testimony of the appellant), 144 (testimony of the appellant's supervisor); IAF, Tab 5 at 12, 14. When asked how often he had to physically chase down and apprehend a suspect, the appellant did not provide a clear answer; instead, he testified that such a task was "not the investigator[']s role." HT at 20-21 (testimony of the appellant).

¶18     In the initial decision, the administrative judge determined that the maximum entry age for the appellant's position was 37 and retirement was mandatory at age 57. ID at 6; HT at 14 (testimony of the appellant). However, in his response to the petition for review, the appellant avers that, "[a]s of August 6, 2016, [he] had completed 20 years of law enforcement officer service . . . and was 64 years of age." PFR File, Tab 3 at 6 n.1. It is not necessary for us to resolve this discrepancy or determine whether the appellant's position was subject to age requirements because, even assuming that it was, he has not satisfied the other considerations for physical vigorousness.

¶19     Finally, the administrative judge found, without any citation to the record, that the appellant "was on call 24 hours and received calls after normal working hours to respond to crime scenes." ID at 7. However, the appellant testified that he was not authorized to record his status as "on-call" and he never received on-call pay. HT at 54 (testimony of the appellant). Moreover, his supervisor testified that there was never any official requirement that the appellant be on-call for 24 hours. HT at 143 (testimony of the appellant's supervisor). The appellant testified that he was frequently called into work in the middle of the night, but the

record does not support the administrative judge's conclusion that his position required him to be on-call 24 hours a day. HT at 54 (testimony of the appellant); *see Crowley*, 398 F.3d at 1341 (finding anecdotal evidence that the employee was called into work at irregular hours and testimony regarding the appellant's general availability insufficient to support a finding that the employee was officially required to be on call 24 hours a day).

¶20    For these reasons, we conclude that the appellant's actual duties in the Criminal Investigator position did not require physical vigorousness. Under such circumstances, we need not consider hazardousness in our analysis. *Crowley*, 398 F.3d at 1339.

¶21    We further find that evidence regarding the appellant's actual duties in the Criminal Investigator position showed that his primary duties did not involve investigating, apprehending, or detaining suspected criminals or protecting U.S. officials against threats to personal safety. Indeed, the evidence reflected that a substantial portion of the appellant's investigatory work, as much as 40%, was devoted to conducting background checks on agency employees. HT at 30-32, 44-48 (testimony of the appellant), 106-08 (testimony of the appellant's supervisor). Similarly, the position required that he spend as much as 20% of his time serving as the primary evidence custodian. IAF, Tab 15 at 94; HT at 22-23 (testimony of the appellant), 108 (testimony of the appellant's supervisor). His job duties also included coordinating and conducting training for police officers and police security guards, working with a family advocacy group that addressed domestic violence issues, and working with a crime prevention community outreach program. IAF, Tab 15 at 94, Tab 16 at 6; HT at 29-32, 39-41 (testimony of the appellant). Although the record showed that the appellant spent as much as 40% of his time investigating criminal activity, to include interviewing witnesses and collecting evidence, the appellant did not prove by preponderant evidence that the primary duties of his position involved investigating, apprehending, and detailing criminals. HT at 136-38 (testimony of the appellant's supervisor); *see*

5 C.F.R. § 842.802 (stating that, if an employee spends on average at least 50% of his time performing certain duties, those duties are his primary duties).

¶22    Regarding whether his actual duties involved protecting U.S. officials against threats to personal safety, the record contains copies of the appellant's performance evaluations, which referenced his involvement with "Personnel Protective Missions," "VIP + Dignitaries [P]rotection," "becoming High Ranking Person Protection[] certified," and physical security. *E.g.*, IAF, Tab 15 at 93-97, Tab 16 at 4-38, Tab 17 at 4-26. The record also contains a memorandum written by the appellant's supervisor suggesting that, following September 11, 2001, the appellant "performed protective service detail functions to accompany high importance command and staff personnel" as an overtime assignment. IAF, Tab 5 at 15-16. At the hearing, when asked whether "serving on protective service details or missions" was one of his primary duties, the appellant explained only that, "[a]fter 9/11, it was made a priority." HT at 35 (testimony of the appellant). We conclude that the appellant did not show that his primary duties as a Criminal Investigator involved the protection of U.S. officials against threats to personal safety because his provided no estimate as to how often he engaged in such protective duties, and the subject memorandum suggested that the appellant only performed protective service details on an infrequent basis as an overtime assignment. IAF, Tab 5 at 15-16; *see* 5 C.F.R. § 842.802 (stating that duties of an emergency, incidental, or temporary nature cannot be considered "primary" even if they occupy a substantial portion of the individual's working time).

The appellant is not entitled to LEO retirement coverage under FERS for service after August 6, 2016.

¶23    The initial decision did not address the appellant's eligibility for LEO retirement coverage for his service as a GS-0083 Detective after August 6, 2016. PFR File, Tab 1 at 7 n.1. Although the appellant contended before the administrative judge that he was entitled to LEO retirement coverage for this period of service, IAF, Tab 25 at 4, 10-13, he does not raise this issue on review.

We conclude, however, that the appellant is not entitled to LEO retirement coverage for his service after August 6, 2016.

¶24     As noted above, effective August 7, 2016, the agency reclassified the appellant's position to that of a series GS-0083 Detective. IAF, Tab 5 at 38-41. Consistent with *Klipp*, we first examine the position description. IAF, Tab 9 at 32-41. The Detective position description stated that the appellant's duties involved, among other things, "conduct[ing] investigations to apprehend and/or detain persons committing crimes against persons and property;" "[d]evelop[ing] and follow[ing] leads, tak[ing] statements, and gather[ing] information and facts;" "[a]nalyz[ing] data to identify suspects and develop[ing] case information for use in pressing charges and bringing suspects to trial;" "[p]erform[ing] surveillance of suspects, crime scenes, and suspected or potential criminal activities;" "[i]nterview[ing] witnesses, suspects, and victims, and obtain[ing] statements;" "[a]ppear[ing] as a witness or testif[ying] at trials, hearings, courts martial[,] and other [F]ederal judiciary proceedings;" "conduct[ing] raids and/or [premises searches], apprehend[ing] and/or detain[ing] suspects, and seiz[ing] evidence, weapons, [and] contraband;" "performing . . . physical security;" and "[p]articipating in VIP 'Personal Protection Missions.'" *Id.* at 33-34. These duties could qualify as LEO work, but the position description stated that such duties only accounted for 45% of the Detective duties. As such, we do not find that they constitute primary duties. *See* 5 C.F.R. § 842.802 (noting that, in general, if an employee spends on average at least 50% of his time performing certain duties, those duties are his primary duties). Therefore, we find that the Detective position description does not support the appellant's claim of entitlement to LEO credit because his primary duties did not involve the investigation, apprehension, or detention of individuals suspected or convicted of criminal offenses or the protection of U.S. officials against threats to personal safety.

¶25    Turning to the second inquiry, we find that evidence of the appellant's actual job duties as a Detective did not prove that his service was creditable. Here, too, the actual duties of the Detective position did not support a finding of physical vigorousness. Indeed, following the reclassification, the appellant's day-to-day job duties remained largely unchanged, with the exception that, as a GS-0083 Detective, he was subject to physical fitness testing.[4] HT at 63-64 (testimony of the appellant), 112, 133-34 (testimony of the appellant's supervisor). The appellant testified that his current physical fitness standards require that he complete a 1.5-mile run in less than 17 minutes and "15 or 18 push-ups." HT at 64 (testimony of the appellant). Neither the appellant nor his supervisor identified any other physical fitness requirements. We find that these physical fitness standards do not constitute strenuous physical fitness requirements. Additionally, the appellant testified that he was not subject to any age requirements in the Detective position, including a mandatory retirement age or a maximum entry age, and there was no evidence that the appellant had to be on-call 24 hours a day. *Id.* (testimony of the appellant). Because we find that the duties of the Detective position did not involve physical vigorousness, we need not consider hazardousness. *See Crowley*, 398 F.3d at 1339. We further find that the primary duties of the Detective position, as evidenced by his actual duties, did not involve the investigation, apprehension, or detention of individuals suspected or convicted of criminal offenses or the protection of U.S. officials against threats to personal safety.

Conclusion

¶26    For the reasons described herein, the appellant has not met his burden of proving that he is entitled to receive the LEO retirement benefits that he seeks

---

[4] In pertinent part, the appellant's supervisor testified that, as a Detective, the appellant performed background check investigations approximately 40% of the time, he performed evidence custodian tasks 10-20% of the time, and he performed internal investigations 5% of the time. HT at 112-13 (testimony of the appellant's supervisor).

from August 7, 1994, until August 6, 2016, and from August 7, 2016, onward. Accordingly, we reverse the initial decision and affirm the agency's final decision.

¶27    Although we acknowledge that this is the correct outcome, we are nevertheless troubled by certain facts present in this appeal. Specifically, in the summer of 1994, prior to the appellant's appointment, the agency approved certain positions for special retirement coverage and designated the appellant's position of Criminal Investigator, GS-1811-05 through GS-13, as one with primary/rigorous LEO duties. IAF, Tab 9 at 11-13, 15-16. In fact, while he was classified as a Criminal Investigator, the appellant's Standard Form 50s indicated that his retirement plan was "M," described as "FERS AND FICA SPEC[IAL]," *id*. at 8-9, Tab 8 at 38, Tab 5 at 38, which reflects an LEO or firefighter retirement plan. *See* OPM, CSRS and FERS Handbook, *Payroll Office Reporting of Withholdings and Contributions*, ch. 80, § 80A5.1-3 (Apr. 1998), https://www.opm.gov/retirement-services/publications-forms/csrsfers-handbook/c080.pdf. Therefore, the appellant contributed an increased amount to his retirement annuity because of the agency's classification of his position. *Id.*; *see also* 5 U.S.C. § 8422(a) (setting forth the rate of deduction and contributions based on categories of employees, including LEOs).

¶28    While the appellant was refunded the excess contributions, IAF, Tab 4 at 53, the appellant's retirement plans were nevertheless upended by the agency's failure to properly classify his position for over two decades. In another context, this outcome could have been prevented by the application of a variety of equitable defenses, including laches, which bars an action when an unreasonable delay in bringing the action has prejudiced the party against whom the action is taken. *Johnson v. U.S. Postal Service*, 121 M.S.P.R. 101, ¶ 6 (2014). However, the Board's hands are proverbially tied by the U.S. Supreme Court's decision in *Office of Personnel Management v. Richmond*, 496 U.S. 414, 416, 434 (1990),

which prohibits the use of equitable considerations as a basis for granting benefits to which an employee is not otherwise legally entitled.

## ORDER

¶29    This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE OF APPEAL RIGHTS[5]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:         _____
*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.